UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

IN RE:                                              CASE NO. 10-42604-RBR

CARPENTER CONTRACTORS                               CHAPTER 11
OF AMERICA, INC., d/b/a R & D THEIL,

                    Debtor.

_____/

### DEBTOR IN POSSESSION'S EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING USE OF CASH COLLATERAL
(Emergency Hearing Requested)

**Absent the emergency relief sought herein, the Debtor will be unable to pay the ordinary and necessary expenses associated with the continued daily operation of its business, including but not limited to the payment of its labor force and plant costs and would not be able to reorganize successfully under Chapter 11.**

Debtor in Possession, Carpenter Contractors of America, Inc., d/b/a R & D Thiel ("Carpenter Contractors" or the "Debtor"), by and through its proposed undersigned counsel, hereby moves on an emergency basis for entry of interim and final orders pursuant to 11 U.S.C. §§ 105(a) 361 and 363, Rule 4001 of the Federal Rules of Bankruptcy Procedure and Local Rule 9075-1, authorizing the Debtor's use of cash collateral as defined in 11 U.S.C. § 363(a) and determining adequate protection under 11 U.S.C. § 363(e).  In support of this Motion, the Debtor respectfully represents as follows:

### Preliminary Statement and Basis for Emergency Hearing

1.      On October 25, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

2.      The Debtor is operating its business as a debtor-in-possession pursuant to Bankruptcy Code Sections 1107 and 1108.  No trustee, examiner, or official committee of unsecured creditors has been appointed to date.

3.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. §157(b).

4.      The statutory predicates for the relief requested herein are Sections 361 and 363 of the Bankruptcy Code and Rule 2002 and 4001 of the Federal Rules of Bankruptcy Procedure.

5.      Carpenter Contractors, an Illinois corporation, provides carpentry services to builders of new homes in Illinois and Florida.  In addition, Carpenter Contractors manufactures building components and distributes construction materials in the above locations as well as in North Carolina.

6.      The Debtor's corporate headquarters are located at 941 SW 12th Ave., Pompano Beach, FL 33880.

7.      The Debtor receives substantially all of its income from providing carpentry services and by supplying building components and construction materials primarily to very large, publicly traded homebuilders.

8.      The Debtor seeks the use of alleged cash collateral and a determination of adequate protection. The emergency nature of this Motion is that absent the interim and final relief sought, the Debtor will be unable to pay the ordinary and necessary expenses associated with the continued daily operation of its business, including but not limited to the payment of its labor force and plant costs and would not be able to reorganize successfully under Chapter 11. This assumes for purposes of this Motion that Secured Creditor have valid liens on cash collateral as is further discussed below. Absent the ability to use the daily cash receipts to pay the ordinary and necessary expenses associated with its business, the Debtor could be forced to discontinue operations.

RICE PUGATCH ROBINSON & SCHILLER, P.A.

2

**Creditors' Interest in Cash Collateral**

9.      As described below, First American Bank (hereinafter the "Secured Creditor") appears to hold security interests in a majority, if not all, of the accounts receivables, and the proceeds thereof, owned by the Debtor and located at certain of its locations. The Secured Creditor's security interest represents the vast majority of the Debtor's inventory and revenue stream.

**Relief Requested**

10.     By way of this Motion, the Debtor seeks the entry of an Order authorizing the interim use of cash collateral that is subject to the above liens of the Secured Creditor.

11.     All cash and cash equivalents, funds and proceeds generated by the sale of Debtor's services and inventory may constitute the cash collateral of the Secured Creditor within the meaning of Section 363 of the Bankruptcy Code.

12.     The Debtor in Possession is still investigating the liens of its secured creditors and reserves any and all of its rights to challenge the validity, priority and extent of any lien claimed on any and all of the Debtor's assets.

13.     It is the position of the Secured Creditor and the Debtor in Possession that the value of the collateral securing the indebtedness to the Secured Creditor exceeds the amount of the Secured Creditor's claim. Accordingly, the Secured Creditor is adequately protected by a substantial equity cushion.

14.     However, the Debtor acknowledges that the Secured Creditor may be entitled to adequate protection of its security interest in and lien on the cash collateral after the Petition Date in accordance with Sections 361 and 363 of the Bankruptcy Code.

RICE PUGATCH ROBINSON & SCHILLER, P.A.

15.     Accordingly, the Debtor maintains that its continued use of cash collateral would require either the consent of the Secured Creditor or the authorization of this Court as set forth in 11 U.S.C. § 363(c)(2).

16.     In an abundance of caution the Debtor seeks the use of cash collateral in its operations and as such, if necessary, will provide adequate protection pursuant to the terms hereof.

17.     In connection with the Debtor's use of cash collateral and in order to provide adequate protection (to the extent necessary) in respect to the Debtor's use of such cash collateral, the Debtor shall, subject to approval of this Court, grant a replacement lien on and in all property acquired or generated post-petition by the Debtor's continued operations to the same extent and priority and of the same kind and nature as the Secured Creditor would have had prior to the filing of this bankruptcy case and subject to all objections and avoidance claims; but excluding all proceeds of property recovered or transfers avoided by or on behalf of the Debtor, its estate or any subsequently appointed trustee under Sections 544 through 550, inclusive, of the Bankruptcy Code (the "Post-Petition Collateral").

18.     The Debtor proposes that this replacement lien in the Post-Petition Collateral shall be valid and perfected only to the same extent as and subject to the same objections and avoidance claims, without the need for the execution, filing or recording of any further documents or instruments, otherwise required to be executed or filed under non-bankruptcy law.

19.     Further, the Debtor proposes to use cash collateral as well all revenue generated from its overall post-petition operations in accordance with the terms contained in a 30 Day Budget prepared by the Debtor (the "30 Day Budget")[1] and to pay fees and costs of estate

_____

1 The Debtor shall circulate to First American Bank, and file such budget with the Court prior to the Hearing on this motion.

RICE PUGATCH ROBINSON & SCHILLER, P.A.

professionals counsel pursuant to the procedures established by separate order of the Court.[2]

20.     The Debtor requests that it be authorized:  (i) to exceed any line item on the 30 Day Budget by an amount equal to ten (10%) percent of such line item; or (ii) to exceed any line item by more than ten (10%) percent so long as the total amounts in excess of all line items for the 30 Day Budget do not exceed ten (10%) percent in the aggregate of the total 30 Day Budget.

21.     The Debtor shall also furnish the Secured Creditor with such financial and other information reasonably requested with respect to the Debtor's operations.

## Applicable Authority for Relief Requested

22.     Pursuant to the terms set forth above, the Debtor shall provide the Secured Creditor with adequate protection as contemplated by Sections 361, 363(c)(2)(B) and 363(e), respectively, and hereby seeks the Court's approval thereof.  The Bankruptcy Code does not explicitly define "adequate protection" but does provide a non-exhaustive list of the means by which a debtor may provide adequate protection, including "other relief" resulting in the "indubitable equivalent" of a secured creditor's interest in such property.  11 U.S.C. § 361.

23.     What constitutes adequate protection must be evaluated on a case-by-case basis. *In re Swedeland Dev. Group Inc.*, 16 F.3d 552, 564 (3d Cir. 1994); *Martin v. United States (In re Martin)*, 761 F.2d 472, 474 (8th Cir. 1985).

24.     The purpose of the adequate protection requirement is to protect a secured creditor from the diminution in the value of its interest in the particular collateral during the period of use.  *In re Ledgemere Land Corp.*, 116 B.R. 338, 343 (Bankr. D. Mass. 1990); *Delbridge v. Production Credit Ass'n. and Fed. Land Bank*, 104 B.R. 824, 827 (E.D. Mich.

---

[2] The Debtor has requested the retention of counsel and procedures for payment of interim fees by separate motion filed contemporaneously herewith .

1989); *In re Kain*, 86 B.R. 506, 513 (Bankr. W.D. Mich. 1988); *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986).

25.    Courts frequently have recognized the importance of permitting a debtor in possession to use cash collateral, particularly where, as here, denial of such authority may preclude the possibility of successful reorganization:

> In reviewing an application under 11 U.S.C. § 363 which provides for the use of cash collateral, the Court must balance two irreconcilable and conflicting interests.  The holder of a lien on cash collateral must not be left unprotected by unrestricted use of the collateral by the debtor.  However, the purpose of Chapter 11 is to rehabilitate debtors and generally, access to cash collateral is necessary in order to operate a business.  The equities in each case must be weighed in striking a balance.

*Stein v. United States Farmers Home Admin. (In re Stein)*, 19 B.R. 458, 459 (Bankr. E.D. Pa. 1982); see *also Sel-O-Rak*, 24 B.R. at 7 (granting authority to use cash collateral to prevent immediate cessation of operations).

26.    Similarly, in the case of *In re Post-Tron Sys. Corp.*, 106 B.R. 345 (Bankr. D.R.I. 1989), the bankruptcy court granted the debtor's emergency motion to use cash collateral, expressing its concern that:

> [T]o close the debtor's business now would leave all concerned with a practically worthless array of [inventory], and no hope of recovery, except for whatever fractional amount the Bank might realize at auction. The Bank's incomprehensible desire to self-destruct [by opposing the use of cash collateral] at such an early date is not (yet) justification to bring down with it all other interested parties in the case.

*Id*. at 346.

27.    Moreover, the Debtor's use of the cash collateral in order to preserve its value as a going concern for the benefit of all of its creditors is a vitally important basis for granting this Motion.

28.     It is well established that a bankruptcy court, where possible, should resolve issues in favor of preserving the business of the debtor as a going concern:

> A debtor, attempting to reorganize a business under Chapter 11, clearly has a compelling need to use "cash collateral" in its effort to rebuild. Without the availability of cash to meet daily operating expenses such as rent, payroll, utilities, etc., the congressional policy favoring rehabilitation over economic failure would be frustrated.

*In re George Ruggiere Chrysler-Plymouth*, 727 F.2d 1017, 1019 (11th Cir. 1984).

29.     Accordingly, courts authorize the use of cash collateral to enhance or preserve the debtor's going concern value.  For example, in the case of *In re Stein*, 19 B.R. 458 (Bankr. E.D. Pa. 1982), the court allowed a debtor to use cash collateral where the secured party was under secured, finding that the use of cash collateral was necessary to the debtor's continued operations and the creditor's secured position would only be enhanced by the continued operation of the debtor's business.  *Id.* at 460; *see also Federal Nat'l Mortgage Ass'n v. Dacon Bolingbrook Assocs.*, 153 B.R. 204, 214 (N.D. Ill. 1993) (security interest protected to extent debtor reinvested rents in operation and maintenance of the property); *In re Constable Plaza Assoc.*, 125 B.R. 98 (Bankr. S.D.N.Y. 1991) (debtor's reinvestment of rents to maintain and operate office building preserved and enhanced value of building, which in turn, protected collateral covered by mortgage); *In re Dynaco Corp.*, 162 B.R. 389, 395-96 (Bankr. D.N.H. 1983) (finding that the alternative to the debtor's use of cash collateral, termination of its business, would doom reorganization and any chance to maximize value for all creditors); *In re Karl A. Neise, Inc.*, 16 B.R. 600, 602 (Bankr. S.D. Fla. 1981) (marginally secured creditor adequately protected by lien on post-petition property acquired by debtor, who was permitted to use cash collateral in normal operation of its business).

30.     In this case, the Debtor shall use the cash collateral in its normal business operations.

31.     The Debtor's inventory consists primarily of construction materials which are used for carpentry services and needed to deliver to customers. As such, not only will the Debtor's use of the cash collateral preserve its going concern value, it will also maintain and enhance the value of the cash collateral from such inventory.

32.     On the other hand, if the Debtor is not permitted to use cash collateral, it will likely be forced to cease operations, leaving virtually nothing for its creditors including Secured Creditor, and resulting in a minimal liquidation value for the construction inventory.

33.     Finally, the Debtor shall use the cash collateral and the rest of the post-petition revenue generated from its operations pursuant to the 30 Day Budget as set forth in Paragraphs 19 and 20 above and provide financial and other information reasonably requested by the Secured Creditor.

34.     Accordingly, the Debtor believes that the use of cash collateral pursuant to the terms and conditions set forth above is fair and reasonable and adequately protects the Secured Creditor.

35.     The combination of the Debtor's ability to preserve the going concern value of its business and providing the Secured Creditor with the other protections set forth herein, including the availability of financial reporting adequately protects the Secured Creditor secured position under Sections 361(2) and (3) of the Bankruptcy Code.

36.     For all of the reasons stated above, the Debtor maintains that approval of the use of cash collateral is necessary, fair and proper under the circumstance.

37.     Pursuant to Rule 4001(b)(1)(A), a proposed order granting the relief request herein is attached hereto as Exhibit "A".

WHEREFORE, Debtor-in-Possession, Carpenter Contractors of America, Inc. respectfully requests that this Court enter an Order:  (A) authorizing the Debtor's:  (i) use of the cash collateral of Secured Creditor pursuant to the terms set forth above and in accordance with the 30 Day Budget attached hereto; (ii) granting of a replacement lien to Secured Creditor as set forth above in connection with the use of the cash collateral and (B) setting a final hearing thirty (30) days after the entry of an interim order on this Motion, and awarding any further relief deemed fair and just under the circumstances.

I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

RICE PUGATCH ROBINSON & SCHILLER, P.A.
Proposed Counsel for the Debtor in Possession
101 NE 3rd Ave., Suite 1800
Fort Lauderdale, FL 33301
Telephone:     (954) 462-8000
Facsimile:     (954) 462-4300

By: /s/ Chad P. Pugatch
        CHAD P. PUGATCH
        Florida Bar No.:  220582
        CRAIG A. PUGATCH
        Florida Bar No.: 65338

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished by U.S. Mail to First American Bank and the **List of 20 Largest Unsecured Creditors** attached hereto and via the Court's CM/ECF system to the parties who receive notice by this method this 26th day of October, 2010.

By: /s/  Chad P. Pugatch

J:\Wpdocs\4348 Carpenter Contractors\004 CCA Chapter 11\First Day Motions\Cash Collateral.Doc

RICE PUGATCH ROBINSON & SCHILLER, P.A.

**EXHIBIT "A"**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

IN RE:                                                    CASE NO. 10-42604-RBR

CARPENTER CONTRACTORS
OF AMERICA, INC., d/b/a R & D THIEL,            CHAPTER 11


       Debtor.
_____/

**ORDER:  (I) GRANTING DEBTOR IN POSSESSION'S EMERGENCY
MOTION FOR ENTRY OF INTERIM ORDER AUTHORIZING USE OF CASH
COLLATERAL (II) GRANTING REPLACEMENT LIENS (III) DEEMING SECURED
INVENTORY LENDERS ADEQUATELY PROTECTED;
AND (IV) SCHEDULING A FINAL HEARING**

THIS MATTER came before the Court in Fort Lauderdale, Florida, on October 27, 2010

@ ____, on the *Debtor's Emergency Motion for Entry of Interim and Final Order Authorizing*

*Use of Cash Collateral* (DE #___) (the "Cash Collateral Motion") filed by Debtor in Possession,

Carpenter Contractors of America, Inc., d/b/a R & D Thiel ("Debtor"). The Court having

considered the *Cash Collateral Motion* and having heard argument from counsel, it is

**ORDERED** as follow:

The Debtor is authorized to use cash collateral of the Secured Creditor (as defined in the *Cash Collateral Motion*) as well as revenue generated from its post-petition operations in accordance with the terms of the 30 Day Budget prepared by the Debtor (the "Budget") and to pay fees and costs of estate professionals counsel pursuant to the procedures established by separate order of the Court, through the date of entry of a final order on the *Cash Collateral Motion*;

1.      The Debtor's use of cash collateral and revenue generated from its overall post-petition operations, is permitted:  (i) to exceed any line item on the Revised Budget by an amount equal to ten (10%) percent of such line item; or (ii) to exceed any line item by more than ten (10%) percent so long as the total amounts in excess of all line items for the Budget do not exceed ten (10%) percent in the aggregate of the total Budget;

2.      The Secured Creditor are granted a replacement lien on and in all property acquired or generated post-petition by the Debtor's continued operations to the same extent and priority and of the same kind and nature as they would have had prior to the filing of this bankruptcy case and subject to all objections and avoidance claims; but excluding all proceeds of property recovered or transfers avoided by or on behalf of the Debtor, its estate or any subsequently appointed trustee under Sections 544 through 550, inclusive, of the Bankruptcy Code (the "Post-Petition Collateral");

6.      This replacement lien in the Post-Petition Collateral granted to the Secured Creditor (the "Replacement Lien") is deemed to be valid and perfected only to the same extent as and subject to the same objections and avoidance claims, without the need for the execution,

filing or recording of any further documents or instruments, otherwise required to be executed or filed under non-bankruptcy law;

7.     The Secured Creditor is deemed to be adequately protected by the granting of Replacement Lien as set forth above;

8.     Notwithstanding any other provision of this Interim Order, the finding that the Secured Creditor' interests are adequately protected is without prejudice to the rights of the Secured Creditor to seek modification of the adequate protection provided in this *Interim Order* and without prejudice to the rights of the Debtor or any other party in interest to contest any such requested modification;

9.     The Debtor shall furnish the Secured Creditor with such financial and other information reasonably requested;

10.    Nothing in this Order is intended to be a determination of the extent, validity, or priority of the lien rights of the Secured Creditor, the value of collateral purporting to secure the Secured Creditor' claimed indebtedness, or the need for additional adequate protection to the Secured Creditor.

11.    The Debtor reserves all such rights to challenge the validity, priority and extent of lien rights and claimed indebtedness;

12.    A final hearing to consider the relief sought in the *Cash Collateral Motion* shall be held before the Court on _____.

# # #

Submitted by:
Chad P. Pugatch
Rice Pugatch Robinson & Schiller, P.A.
101 NE 3rd Avenue, Suite 1800
Fort Lauderdale, FL 33301

Attorney Pugatch is directed to serve a copy of this Order on all interested parties and filed a Certificate of Service.