

**ORDERED in the Southern District of Florida on April 06, 2011.**

Raymond B. Ray, Judge
United States Bankruptcy Court

_____

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

In re:

CARPENTER CONTRACTORS OF
AMERICA, INC., d/b/a R & D THIEL, et al.

          Debtors.
_____

Case No. 10-B-42604-RBR
(Jointly Administered)

Chapter 11

**ORDER (1) AUTHORIZING DEBTORS IN POSSESSION
TO OBTAIN POSTPETITION FINANCING; (2) AUTHORIZING USE
OF CASH COLLATERAL; (3) PROVIDING ADEQUATE
PROTECTION; AND (4) GRANTING LIENS, SECURITY
<u>INTERESTS AND SUPERPRIORITY CLAIMS</u>**

Upon the motion (the "Motion") of Carpenter Contractors of America, Inc. d/b/a R & D

Thiel ("Carpenter Contractors") and CCA Midwest, Inc. ("CCA" and, together with Carpenter

Contractors, the "Debtors") for the entry of an Order pursuant to sections 105, 361, 362, 363,

364, and 507(b) of the Bankruptcy Code, 11 U.S.C. §101 et seq. (the "Bankruptcy Code"),

Federal Rule of Bankruptcy Procedure 4001, and Local Rule 4001 authorizing them to (i) obtain

postpetition financing pursuant to section 364 of the Bankruptcy Code from First American Bank

(the "Bank," and in its capacity as prepetition lender, the "Prepetition Lender" and in its capacity as postpetition lender, the "Postpetition Lender"), subject to the terms and conditions set forth herein, (ii) use cash collateral, (iii) grant security interests, mortgages and other liens and super-priority claims to the Postpetition Lender (including a priority lien pursuant to section 364(c)(1) of the Bankruptcy Code, and claims, liens and security interests pursuant to sections 364(c)(2) and (3) of the Bankruptcy Code), and (iv) grant security interests, mortgages and other liens and super-priority claims in order to provide adequate protection to the Prepetition Lender, all as more fully set forth herein, and upon the proceedings held before this Court and good and sufficient cause appearing therefor,

THE COURT HEREBY FINDS:

A.      On October 25, 2010 (the "Petition Date"), Carpenter Contractors filed a voluntary petition under chapter 11 of the Bankruptcy Code.

B.      On October 26, 2010, CCA filed a voluntary petition under chapter 11 of the Bankruptcy Code.

C.      On October 27, 2010, the Court entered an order providing for the joint administration of the Debtors' chapter 11 cases (the "Chapter 11 Cases") pursuant to Bankruptcy Rule 1015 and Local Rule 1015-1 (DE #24).

D.      The Debtors have continued as debtors-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.  The Court has not directed the appointment of a trustee or examiner in these cases, no party in interest has requested the appointment of a trustee or examiner, and the United States Trustee has not yet formed an official creditors' committee.

E.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(D) and (M).  Venue of the Chapter 11 Cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408.

F.      The Debtors and the Postpetition Lender have stipulated that pursuant to (a) the Senior Secured Credit Agreement dated July 11, 2008 (as amended, modified or supplemented the "Prepetition Loan Agreement"), by and among the Debtors as borrowers and the Bank in its capacity as the Debtors' Prepetition Lender, and (b) related agreements and documents (collectively, with the Prepetition Loan Agreement, the "Prepetition Financing Documents"), the Bank as Prepetition Lender made certain loans and other financial accommodations to the Debtors to, among other things, finance and fund the Debtors' business and operations.  As of February 15, 2011, the aggregate amount of $10,227,574.53 was outstanding in respect of loans made by the Bank as Prepetition Lender to the Debtors pursuant to the Prepetition Financing Documents, including, but not limited to, (i) attorneys' fees incurred in connection therewith as provided in the Prepetition Financing Documents, and (ii) letters of credit that remain outstanding as of the date hereof and that were issued pursuant to the Prepetition Financing Documents as additional credit support for the Debtors' obligations under Industrial Revenue Bonds related to the Debtors' facilities in Belvidere and Fayetteville (the "Letter of Credit Facilities"), but excluding accrued interest incurred prior to the Petition Date which the Debtors have already paid in full (collectively, the "Prepetition Indebtedness").  For purposes of this Order, each of the terms "Postpetition Loans" (as hereinafter defined) and "Prepetition Indebtedness" shall include the principal of, and all interest, fees, expenses and other charges owing in respect of, such loans, indebtedness or other financial accommodations (including contingent reimbursement and other obligations in respect of such letters of credit), including any reasonable attorneys', accountants' and financial advisors' fees, expenses and charges that are chargeable or reimbursable under the relevant agreements, documents and instruments relating to such loans or other indebtedness.  The Debtors have stipulated that they are

individually and jointly and severally liable for the Prepetition Indebtedness, and that they will continue to be individually and jointly and severally liable for all amounts advanced under the Prepetition Financing Documents and this Order.

G.     The Debtors and the Postpetition Lender have stipulated that to secure the Prepetition Indebtedness, the Debtors granted to the Prepetition Lender, pursuant to various security agreements, pledge agreements, and other agreements, liens and security interests in substantially all of their personal property and real property, wherever located, then owned or thereafter acquired or arising, including, but not limited to, (i) equipment, (ii) fixtures, (iii) inventory, (iv) documents, (v) instruments, (vi) accounts, (vii) general intangibles, (viii) deposit accounts, (ix) cash, (x) real property commonly described as 2340 Newburg Road, Belvidere, Illinois, (xi) real property commonly described as 190 Gillis Hill Road, Hoke County, Fayetteville, North Carolina, and (xii) the proceeds, products, rents and profits of all of the foregoing (all of the foregoing collateral described above, together with all of the proceeds, products, rents and profits thereof shall be referred to herein collectively as the "Prepetition Collateral," and the Bank's liens and security interests therein as Prepetition Lender shall be referred to herein as the "Lender's Prepetition Liens").

H.     **Findings Regarding Validity of Liens/Indebtedness.**  The Debtors and the Postpetition Lender have stipulated that all cash of the Debtors wherever located on the Petition Date represented either proceeds of loans from the Prepetition Lender to the Debtors or proceeds of Prepetition Collateral.  Pursuant to the Prepetition Financing Documents, the Prepetition Lender has a first, valid and perfected security interest in and lien on all cash of the Debtors, and these funds constitute "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code.

I.    **Findings Regarding Validity of Liens/Indebtedness.**    The Debtors and the

Postpetition Lender have stipulated that subject to paragraph 19 of this Order, the Lender's

Prepetition Liens constitute valid, binding, enforceable and perfected first priority liens subject to

liens described in or otherwise permitted by the Prepetition Loan Agreement, and are not subject

to avoidance or subordination (except insofar as such liens are subordinate to certain liens

permitted by the Prepetition Loan Agreement that are valid, binding, enforceable and in

existence on the Petition Date and the "Carve-Out" (as hereinafter defined) in accordance with

the provisions of this Order) pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

The Debtors believe that the Prepetition Indebtedness constitutes legal, valid and binding

obligations of the Debtors, enforceable in accordance with their terms (other than in respect of

the stay of enforcement arising from section 362 of the Bankruptcy Code), that no offsets,

defenses or counterclaims to the Prepetition Indebtedness exist, and that no portion of the

Prepetition Indebtedness is subject to avoidance or subordination pursuant to the Bankruptcy

Code or applicable non-bankruptcy law.    Notwithstanding anything herein to the contrary,

nothing in this Order shall allow the Bank to prime any *ad valorem* tax, purchase money security

interest or true lease interest that would have given such creditor a senior lien or interest under

applicable non-bankruptcy law as of the Petition Date.

J.    The terms of the proposed financing are fair, reasonable and in the best interests

of the Debtors' estates.    The Bank has agreed to provide the Debtors with exit financing in the

form of (a) a one-year $5,120,000 monitored asset based line of credit ("Exit Financing Line of

Credit"), and (b) a $2,500,000 term note ("Exit Financing Term Note"), repayable in 36 monthly

installments.  Amounts advanced under the Line of Credit and the Exit Financing Term Note will

be subject to a floating interest rate of 30-day LIBOR plus 4.0% (with an interest rate floor of

6.0%). Advances under the Exit Financing Line of Credit will be limited to the lesser of (i) $5,120,000 or (ii) 80% of all eligible accounts receivable and 35% of all eligible inventory (with a cap on inventory advances of $2,000,000) (the "Exit Facility"). The Exit Facility will be documented in accordance with the Bank's standard commercial loan documents that are substantially similar to the Prepetition Financing Documents; provided, however, that, as set forth more fully in paragraph 33 of this Order, the Exit Facility will include provisions that require the Debtors to use a "lockbox" and enter into an agreement substantially in the form of Exhibit B attached hereto. The Exit Facility will provide the Debtors with sufficient working capital and liquidity to formulate a chapter 11 plan of reorganization and emerge from bankruptcy, and will further permit the Debtors to pay down their existing indebtedness. Paying down the Debtors' current indebtedness will further benefit the Debtors and their estates by reducing the amount of interest that the Debtors currently pay on account of their cash on deposit. The Debtors are unable to obtain similarly beneficial financing from any other source.

K.     An immediate and critical need exists for the Debtors to obtain funds in order to continue the operation of their business. Without such funds, the Debtors will not be able to pay their payroll and other direct operating expenses and obtain goods and services needed to carry on their business during this sensitive period in a manner that will avoid irreparable harm to the Debtors' estates, creditors, customers, suppliers and employees. At this time, the Debtors' ability to finance their operations and the availability to them of sufficient working capital and liquidity through the incurrence of new indebtedness for borrowed money and other financial accommodations are vital to the confidence of the Debtors' vendors and suppliers of other goods and services, to their customers, and to the preservation and maintenance of the going concern value of the Debtors' estates. The Debtors are unable to obtain the required funds in the form of

unsecured credit or unsecured debt allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense pursuant to section 364(a) or (b) of the Bankruptcy Code, unsecured debt having the priority afforded by section 364(c)(1), or debt secured as described in section 364(c)(2) or (3) except as set forth herein.

L.      The Prepetition Lender asserts, and the Debtors believe, that except for the "Excluded Collateral" (as hereinafter defined), the Prepetition Collateral which comprises substantially all of the Debtors' other assets is subject to the Lender's Prepetition Liens.  The Bank as Prepetition Lender objects to any further use of the Prepetition Collateral by the Debtor, including the Cash Collateral (as hereinafter defined), except under the terms of this Order.

M.      The Prepetition Lender has indicated a willingness to consent and agree to the Debtors' entering into the financing arrangements contemplated by this Order, and the Postpetition Lender is willing to provide the additional financing contemplated herein, all subject to the conditions set forth herein and in the Prepetition Financing Documents (as amended hereby and subject to the terms hereof) and the provisions of this Order assuring that the "Postpetition Liens" (as hereinafter defined) and the various claims, super-priority claims and other protections granted pursuant to this Order will not be affected by any subsequent reversal or modification of this Order or any other order, as provided in section 364(e) of the Bankruptcy Code, which is applicable to the postpetition financing arrangement contemplated by this Order. The Postpetition Lender and the Prepetition Lender have acted in good faith in consenting to and in agreeing to provide the postpetition financing contemplated by this Order.  The reliance of the Postpetition Lender and the Prepetition Lender on the assurances referred to above is in good faith pursuant to 11 U.S.C. § 364(e).

N.      Pursuant to the Bankruptcy Code and in light of the foregoing, the Debtors are required to provide adequate protection to the Prepetition Lender against any diminution in value of the Prepetition Collateral from and after the Petition Date.  The treatment requested by the Debtors for the Prepetition Lender and provided by this Order will minimize disputes and litigation over collateral values, priming of liens, use of cash collateral, and the need to segregate the Prepetition Collateral and the proceeds thereof from the "Postpetition Collateral" (as hereinafter defined) and the proceeds thereof.

O.      Notice of the hearing on the Motion and this Order has been provided to counsel to the Prepetition Lender, the United States Trustee, all parties known to the Debtors to have liens on or security interests in any of the Debtors' assets, and the 20 largest unsecured creditors of the Debtors for which the Debtors have contact information.  Such notice constitutes sufficient notice under Bankruptcy Rule 4001 and no other notice need be given.

P.      Good cause has been shown for the entry of this Order.  Among other things, entry of this Order will minimize disruption of the Debtors' business and operations and permit them to meet payroll and other operating expenses, obtain needed supplies and retain customer and supplier confidence by demonstrating an ability to maintain normal operations.  The financing arrangement authorized hereunder is vital to avoid immediate and irreparable harm to the Debtors' estates.  Consummation of such financing, therefore, is in the best interests of the Debtors' estates.

Q.      The financing and adequate protection arrangements authorized hereunder have been negotiated in good faith and at arms-length between the Debtors and the Bank as Postpetition Lender and Prepetition Lender.  The terms of such financing and adequate protection arrangements are fair and reasonable under the circumstances, reflect the Debtors' exercise of

prudent business judgment consistent with their fiduciary duties and are supported by reasonably equivalent value and fair consideration.  Therefore, the Debtors, the Prepetition Lender and Postpetition Lender are entitled to the protections provided by section 364(e) of the Bankruptcy Code.

R.    The Debtors have requested immediate entry of this Order pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2).  The permission granted herein to allow the Debtors to enter into the postpetition financing arrangement as set forth herein and obtain funds thereunder is necessary to avoid immediate and irreparable harm to the Debtors.  The Court concludes that entry of this Order is in the best interests of the Debtors and their estates and creditors, as its implementation will, among other things, allow for the continued operation and rehabilitation of the Debtors' existing business and the implementation of the reorganization or sale of the Debtors' business.

THEREFORE, IT IS HEREBY ORDERED THAT:

1.    The Debtors are authorized to borrow money and the Postpetition Lender is authorized to make loans pursuant to the terms of this Order and the provisions of the Prepetition Financing Documents (except as otherwise set forth herein) and perform their obligations hereunder and thereunder, in accordance with, and subject to, the terms of this Order, in compliance with and for the purposes of funding those expenses set forth in the monthly budget attached hereto as Exhibit A (the "Budget").  The Debtors are authorized to borrow funds pursuant to this Order and, subject to the approval of the Postpetition Lender, the Debtors may borrow (I) $2,500,000 in the form of a term note, which will be subject to a floating interest rate of 30-day LIBOR plus 4.0% (with an interest rate floor of 6.0%) (the "DIP Term Note"), and (II) the lesser of (a) the "Loan Limit" or (b) the "Advance Rate" (the "DIP Line of Credit" and, together with the DIP Term Note, the "DIP Facility").  The "Loan Limit" is $5,120,000.  The "Advance Rate" is the sum of 80% of all eligible accounts receivable and 35% of all eligible

inventory (provided that the cap on inventory advances is $2,000,000). The Debtors shall repay such loans by turning over their cash collateral to the Postpetition Lender as provided herein and then drawing down on their line pursuant to the Budget. On each day that the Debtors require funds and wish to draw down on their line, the Debtors shall submit a draw request to the Postpetition Lender to obtain such funds; the draw request shall be in a form acceptable to the Postpetition Lender. The determination of compliance with the Budget shall be made on a month-ending basis for each month until the occurrence of a "Termination Event" (as hereinafter defined) for which there is not a "Non-Termination Notice" (as hereinafter defined). The Debtors may not exceed by more than 15% any expense item of the Budget nor exceed by more than 15% the aggregate amount of expenses provided for in the Budget on a cumulative basis commencing April 5, 2011; provided, however, that these limitations may be amended by (a) agreement of the Debtors and Postpetition Lender, and the Postpetition Lender will give deference to expenses attributable to increased sales in considering any such proposed amendment, or (b) Court order upon notice and motion. Likewise, the Debtors may not fall short by more than 15% of the revenue on a cumulative basis commencing April 5, 2011. Additionally, for any four-week period, the Debtors may not expend Cash Collateral for any payments or expenses related to the airplane leased by the Debtors in excess of $10,000 over and above net revenues generated by any air charter operations during such four-week period. The Debtors also agreed to allow the Bank to conduct quarterly audits upon reasonable notice and at convenient hours and that the Debtors shall pay the Bank the usual and customary fee for such audits that the Debtors had paid the Bank during the prepetition period; provided, however, that the Bank may conduct such other audits as the Bank reasonably believes to be necessary, and that the Debtors shall pay the Bank the usual and customary fee for such additional audits. The

10

Bank estimated that the cost of an individual audit is approximately $15,000, which includes the travel expenses of the auditor.  The Debtors are authorized to enter into such non-material modifications and amendments to the Budget without further Court order as may be agreed upon in writing by the Debtors and the Postpetition Lender.  Notwithstanding any other provision of this Order, the Postpetition Lender shall not have any obligations or commitments to make Postpetition Loans (as defined hereinafter) pursuant to this Order until the conditions precedent provided for herein have been satisfied and this Order has become a final order not subject to an appeal.

2.    **Findings Regarding Validity of Liens/Indebtedness; Wavier of § 506(c) Rights.**  Subject to the orders of this Court and the Bankruptcy Code, the terms of the Prepetition Financing Documents are hereby ratified and approved and shall continue in full force and effect with respect to the Prepetition Indebtedness, Postpetition Indebtedness, Prepetition Collateral and Postpetition Collateral.  Except to the extent that other secured consensual and non-consensual creditors held security interests or liens which were superior to the Bank's liens or security interests under non-bankruptcy law as of the Petition Date, the Bank's liens and security interests are not subject to subordination and, subject to paragraph 19 of this Order, the liens and security interests granted to the Prepetition Lender by the Debtors shall constitute first, paramount, enforceable and valid liens upon and security interests in the Prepetition Collateral and are not and shall not be subject to any claims, set-offs or defenses by the Debtors.  In consideration for the Postpetition Lender's and the Prepetition Lender's performance hereunder, the surcharge provisions of section 506(c) of the Bankruptcy Code and the enhancement of collateral provisions of section 552 of the Bankruptcy Code shall not be imposed upon the Prepetition Lender or the Postpetition Lender or any of their collateral.  In further consideration for the

11

Postpetition Lender's and the Prepetition Lender's performance hereunder, effective immediately upon entry of this Order, but subject to paragraph 19 hereof, the Debtors and their respective successors and assigns, shall without further action or court order, be deemed to have released the Prepetition Lender from any and all rights, claims, liabilities and causes of action that the Debtors may have against the Prepetition Lender and which arose prior to the entry of this Order

3.    From and after the date hereof (the "Effective Date") until: (a) the indefeasible payment in full in cash of the Postpetition Loans, and satisfaction of the Prepetition Indebtedness; and (b) the termination of any commitments or obligations under this Order and/or any financing documents executed subsequent to the date hereof in connection with the Postpetition Loans, the Debtors are hereby authorized and directed to remit, and shall remit to the Bank as Postpetition Lender immediately upon the Debtors' receipt thereof, all "cash collateral" (as defined in Bankruptcy Code section 363(a)) in its possession or control arising from, or constituting proceeds of, the Prepetition Collateral or the Postpetition Collateral, including, but not limited to, all funds contained in all of its deposit accounts on the Petition Date (the "Cash Collateral").   Cash Collateral shall be remitted to the Postpetition Lender in accordance with the terms of the Lockbox Agreement attached hereto as Exhibit B and shall be applied as and to the extent specified in paragraph 4 hereof. For purposes of this Order, "proceeds" of any collateral shall mean proceeds (as defined in the Illinois Uniform Commercial Code) of such collateral as well as: (x) any and all proceeds of any insurance, indemnity, warranty or guaranty payable to or for the account of the Debtors from time to time with respect to such collateral; (y) any and all payments (in any form whatsoever) made or due and payable to the Debtors in connection with any requisition, confiscation, condemnation, seizure or forfeiture of all or any part of such collateral by any governmental body, authority, bureau or agency (or

any person under color of governmental authority); and (z) all other payments, dividends, interest or other distributions on or in respect of any such collateral, except that cash collateral does not consist of any avoidance actions or the proceeds thereof.

4.    **Roll-up of Prepetition Debt or Use of Postpetition Loans to Pay Prepetition Debt.** From and after the Petition Date, any payments by the Debtors to the Bank shall be applied as follows:

      (i)    First, to accrued, unpaid interest, costs, expenses and protective advances made by the Bank that accrued on the Prepetition Indebtedness after the Petition Date; [1]

      (ii)    Second, to the principal amount of the Prepetition Indebtedness;

      (iii)    Third, to accrued, unpaid interest, costs, expenses and protective advances made by the Bank that accrued on the Postpetition Loans; and

      (iv)    Fourth, to the principal amount of the DIP Line of Credit.

5.    Any and all payments or proceeds remitted, or deemed to be remitted, to the Bank pursuant to the provisions of paragraph 4 of this Order (or any similar provisions of the Prepetition Financing Documents) shall be received, or deemed received by the Bank, as applicable, free and clear of any claim, charge, assessment or other liability including, without limitation, any such claim or charge arising out of or based on sections 506(c) or 552(b) of the Bankruptcy Code, whether directly or indirectly, all of which are hereby waived by the Debtor.

---

[1] In the event that this Court should determine that the amount of the Prepetition Indebtedness exceeded the value of the Prepetition Collateral as of the Petition Date, any amounts applied toward the obligations set forth in paragraph 4(i) shall be recharacterized as having been applied to satisfy the obligations set forth in paragraph 4(ii)-(iv).

6.      From and after the Effective Date through the occurrence of a Termination Event for which there is not a Non-Termination Notice, and subject to this Order's terms and conditions, the Debtors are hereby authorized to borrow and re-borrow funds pursuant to the terms and provisions of this Order and the Prepetition Financing Documents.

7.      The Debtors are hereby authorized and directed to cause all collections of Cash Collateral to be administered according to the terms set forth in the Lockbox Agreement attached hereto as <u>Exhibit B</u>, and as more fully set forth in paragraph 33 of this Order.  In addition, the Debtors shall maintain all of their bank accounts, whether deposit accounts or otherwise, with the Bank. The Debtors shall not maintain any other accounts without the express written consent of the Postpetition Lender.  The Bank shall continue to be a bank approved by the U.S. Trustee.

8.      **Grant of Liens on Property of the Estate.** As security for all loans, advances and any other indebtedness or obligations, contingent or absolute, which may now or from time to time hereafter be owing by the Debtors to the Postpetition Lender (all such loans, advances, indebtedness or obligations, including the DIP Facility, are the "<u>Postpetition Loans</u>"), the Postpetition Lender is hereby granted valid, binding, enforceable and perfected liens, security interests, and mortgages (the "<u>Postpetition Liens</u>") on all currently owned or hereafter after acquired property and assets of the Debtors of any kind or nature, whether real or personal, tangible or intangible, wherever located, now owned or hereafter acquired or arising (other than the Excluded Collateral), including, without limitation, all real property, all equipment, inventory, cash, goods, accounts, inventory, cash-in-advance deposits, deposit accounts, general intangibles, deposit accounts, real estate, machinery, equipment, vehicles, trademarks, trade names, licenses, claims and causes of action, rights to payment including tax refund claims, insurance proceeds and tort claims, avoidance actions under chapter 5 of the Bankruptcy Code,

14

and the proceeds, products, rents and profits of all of the foregoing (all of the foregoing, the "Postpetition Collateral"), in each case subject only to: (i) the Carve-Out; and (ii) consensual and non-consensual security interests or liens that were superior to the Bank's liens or security interests under non-bankruptcy law as of the Petition Date with respect to property subject to such superior liens the Bank shall have a junior lien. "Excluded Collateral" shall have the same meaning as used in the Credit Agreement except that Excluded Collateral shall also include the Debtors' real property, including any improvements, buildings, fixtures and such equipment as is necessary for the operation of the Premises – e.g. the HVAC system, etc., located at 3900 Avenue G, N.W., Winter Haven, FL 33880, avoidance actions and proceeds thereof.

9.    **Grant of Liens on Property of the Estate;**    As adequate protection, the Prepetition Lender and the Postpetition Lender are hereby granted valid, binding, enforceable and perfected liens (the "Adequate Protection Liens") in all Postpetition Collateral to secure an amount of Prepetition Indebtedness (the "Adequate Protection Obligations") equal to the aggregate amount of diminution in value of the Prepetition Collateral, whether by depreciation, use, sale, loss decline in market price or otherwise. The Adequate Protection Liens are subject only to: (i) the Postpetition Liens; (ii) the Carve-Out; and (iii) any consensual or non-consensual liens or security interests existing on or in the Postpetition Collateral that are valid, binding, enforceable and perfected liens on the Petition Date, that are not otherwise subject to avoidance or subordination, and that would have had a higher priority than the Prepetition Lender's liens as of the Petition Date.

10.    Except as expressly set forth in this Order, the liens and security interests granted in this Order shall not be: (a) subject to any lien which is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code; or (b) subordinated to or made

*pari passu* with any other lien under section 364(d) of the Bankruptcy Code or otherwise. Notwithstanding the above, the liens and security interests granted in this Order and pursuant to the Prepetition Financing Documents shall be subject and subordinate to the "Carve-Out." The Carve-Out is hereby defined as follows: (1) amounts payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a) and fees to the Clerk of Court; (2) the payment of *ad valorem* taxes; and (3) the payment of unpaid professional fees, costs and expenses of the Debtors' attorneys, accountants, investment bankers, financial advisors or other professionals retained by any of the Debtors ("Professional Expenses"), but only to the extent that such Professional Expenses: (A) were not incurred in the prosecution of claims, causes of action, actions or proceedings against the Prepetition Lender in respect of the Prepetition Indebtedness or otherwise; (B) do not exceed an amount equal to the lesser of (x) the amount thereof projected to be incurred or accrued through such date in the Budget then in effect (but as to any particular professional, only such amount set forth in such Budget for such professional), (y) the amount thereof actually allowed by the Bankruptcy Court, and (z) $100,000 (exclusive of any prepetition retainers held by such Professionals); provided, however, that in no event shall any of the Carve-Out include any fees or expenses arising after the conversion of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code.

11.    In addition, (a) the Postpetition Loans shall have priority in accordance with the provisions of section 364(c)(1) of the Bankruptcy Code over all administrative expenses of the kind specified in sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546(c), or 726 of the Bankruptcy Code ("Super-priority"), subject only to the Carve-Out, and (b) the Adequate Protection Obligations shall have Super-priority, subject only to the Carve-Out and the aforementioned Super-priority of the Postpetition Loans. Except for the Carve-Out, no costs or

administrative expenses which have been or may be incurred in these Chapter 11 Cases, in any conversion of either of these Chapter 11 Cases pursuant to section 1112 of the Bankruptcy Code, or in any other proceeding related thereto, and no priority claims, including, without limitation, any other Super-priority claims, are or will be prior to or on a parity with the claims of the Postpetition Lender against the Debtors arising, as applicable, out of the Postpetition Loans or Adequate Protection Obligations or any provision of this Order or with the liens and security interests granted herein on, in and to the Postpetition Collateral.

12.     The Postpetition Loans shall become due and payable, without notice or demand, on the Termination Date, as provided herein unless the Postpetition Lender issues a Non-Termination Notice.  From and after the Termination Date, the Debtors shall have no authority to use Prepetition Collateral (including Cash Collateral) of the Prepetition Lender or Postpetition Collateral of the Postpetition Lender.

13.     From and after the Effective Date, the proceeds of the Postpetition Loans, the Prepetition Collateral, and the Postpetition Collateral shall not, directly or indirectly, be used to pay expenses of the Debtors or otherwise disbursed except for: (a) those expenses, payments, and/or disbursements that are expressly set forth in the Budget or otherwise expressly permitted under this Order; (b) compensation and reimbursement of expenses allowed by this Court, but in no event greater than the Carve-Out to attorneys, accountants, investment bankers, financial advisors or other professional persons retained by the Debtors; and (c) amounts due to the Prepetition Lender and Postpetition Lender and their accountants, attorneys or other professionals hereunder which amounts shall be reasonable, but shall not otherwise be subject to the approval of this Court; provided that the foregoing shall not be construed as consent to the allowance of any of the amounts referred to in the preceding clauses (a) or (b) and shall not

17

affect the right of the Prepetition Lender or the Postpetition Lender to object to the allowance and payment of such amounts.  No consent by the Postpetition Lender or the Prepetition Lender to any administrative claims, including fees and expenses of professionals, sought to be assessed against or attributed to the Postpetition Lender or the Prepetition Lender or their respective interests in the Prepetition Collateral or the Postpetition Collateral pursuant to the provisions of section 506(c) of the Bankruptcy Code or otherwise by, through or on behalf of the Debtors, shall be implied from any action, inaction or acquiescence by the Prepetition Lender or the Postpetition Lender or otherwise.  Except as set forth in the first sentence of this paragraph 13, neither the Prepetition Lender nor the Postpetition Lender has consented or agreed to the use of the proceeds of the Postpetition Loans, Prepetition Collateral or the Postpetition Collateral.

14.    **Relief from the Automatic Stay Without Further Order of Court.**  The automatic stay extant under Bankruptcy Code section 362(a) shall be, and it hereby is, modified to the extent necessary to permit the Prepetition Lender and the Postpetition Lender to retrieve, collect and apply payments and proceeds in respect of the Prepetition Collateral and the Postpetition Collateral in accordance with the terms and provisions of this Order.

15.    Notwithstanding anything herein, unless the Postpetition Lender issues a notice to the contrary (a "Non-Termination Notice") the Debtors shall no longer, pursuant to this Order or otherwise, be authorized to borrow funds hereunder or to use Cash Collateral or any proceeds of the Postpetition Loans already received (and any obligation of the Postpetition Lender to make loans or advances hereunder shall be terminated) upon the earliest to occur of any of the following events (any such event shall be referred to as a "Termination Event" and the date of any such event for which there is not a Non-Termination Notice shall be referred to as the "Termination Date"):

(a)    material non-compliance by the Debtors with any of the terms, provisions or covenants of this Order;

(b)    any new or additional "Default" (as defined in the Prepetition Financing Documents) under the Prepetition Financing Documents first occurring subsequent to the entry of this Order shall have occurred and be continuing beyond any applicable cure period;

(c)    the Maturity Date (as hereinafter defined); or

(d)    the failure to make any required payment on the Debtors' obligations on account of the Letter of Credit Facilities.

16.    All obligations and commitments of the Prepetition Lender and the Postpetition Lender hereunder shall terminate at the earliest to occur of the following (the "Maturity Date"): (a) November 1, 2011; (b) the effective date of any plan of reorganization or liquidation in these Chapter 11 Cases; (c) conversion of either of these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code; (d) appointment of a trustee in either of these Chapter 11 Cases; or (e) dismissal of either Chapter 11 Case.

17.    Upon the occurrence and during the continuation of any Default (under the Prepetition Financing Agreements or this Order), the Bank may seek on an expedited basis an order from this Court vacating and modifying the automatic stay provisions of section 362 of the Bankruptcy Code to the extent necessary to permit the Bank to exercise all rights and remedies provided in the Prepetition Financing Agreements and to take any or all of the following actions: (a) immediately terminate the Debtors' use of Cash Collateral; (b) immediately set off any and all amounts in accounts maintained by the Debtors with the Bank against the Prepetition Obligations; and (c) take any other actions or exercise any other rights or remedies permitted under this Order, the Prepetition Financing Agreements, or applicable law to effect the repayment of the Prepetition Obligations. Neither the Debtors nor any other party shall have the right to contest the Bank's request for an order from this Court vacating and modifying the

automatic stay provisions on any basis other than an assertion that no Default has occurred or that such Default is a non-material Default.  The rights and remedies of the Bank specified herein are cumulative and not exclusive of any rights or remedies that the Bank may have under the Prepetition Financing Agreements or otherwise.

18.    Notwithstanding the occurrence of the Termination Date or anything herein to the contrary, all of the rights, remedies, benefits and protections provided to the Prepetition Lender and the Postpetition Lender under this Order shall survive the Termination Date.  Upon the Termination Date, the Bank may declare the principal and accrued interest and fees and all other amounts owed to the Postpetition Lender together with all amounts heretofore due the Prepetition Lender immediately due and payable, and the Prepetition Lender and the Postpetition Lender shall have all other rights and remedies provided in the Prepetition Financing Documents and this Order.  Notwithstanding anything herein, no amounts under the Carve-Out, or the proceeds of the Postpetition Loans, or the proceeds of the Prepetition Collateral or the Postpetition Collateral shall be used for the purpose of: (a) objecting to or contesting in any manner, or in raising any defenses to, the validity, extent, perfection, priority, or enforceability of the Prepetition Indebtedness or any liens or security interests with respect thereto, or any other rights or interests of the Prepetition Lender or the Postpetition Lender or in asserting any claims or causes of action, including, without limitation, any actions under chapter 5 of the Bankruptcy Code against the Prepetition Lender or the Postpetition Lender; (b) preventing, hindering, or delaying the Postpetition Lender's enforcement or realization upon any of the Collateral; (c) using Cash Collateral or selling any Collateral except as specifically permitted in this Order (including the Carve-Out) or by order of the Bankruptcy Court; (d) incurring indebtedness except as permitted in this Order; or (e) modifying the Postpetition Lender's rights hereunder.

19.    **Findings Regarding Validity of Liens/Indebtedness; Findings that Bind Subsequently Appointed Trustees.**  The findings contained above and the other provisions of this Order shall be binding upon all parties in interest, including, without limitation, any statutory committees appointed in these Chapter 11 Cases.  Upon entry of this Order, (a) the Prepetition Indebtedness shall be deemed final and indefeasible, not subject to subordination or otherwise unavoidable, (b) the Prepetition Indebtedness shall constitute allowed claims, not subject to subordination or otherwise unavoidable, for all purposes in these Chapter 11 Cases and any subsequent chapter 7 case, (c) the Lender's Prepetition Liens on the Prepetition Collateral shall be deemed legal, valid, binding, perfected, not subject to defense, counterclaim, offset of any kind, subordination or otherwise unavoidable, and (d) the Prepetition Lender, the Prepetition Indebtedness, the Prepetition Financing Documents and the Lender's Prepetition Liens on the Prepetition Collateral shall not be subject to any other or further challenge by any party in interest seeking to exercise the rights of the Debtors' estates, including without limitation, any successor thereto.  Subject only to the foregoing provisions of this paragraph 19, the Prepetition Lender shall be deemed released of all claims, rights, causes of action or defenses by, and all liabilities owing to, the Debtors, any statutory committee appointed in these Chapter 11 Cases, all of the Debtors' creditors, and any subsequently appointed trustee arising out of or based on any facts or circumstances occurring prior to the date hereof.

20.    The Postpetition Lender and the Prepetition Lender shall be entitled to all of the benefits of section 364(e) of the Bankruptcy Code for all postpetition advances made to the Debtors hereunder.

21.    The Prepetition Lender and the Postpetition Lender shall be entitled to apply the payments or proceeds of the Prepetition Collateral and the Postpetition Collateral in accordance

with the provisions of this Order, and in no event shall the Prepetition Lender or the Postpetition Lender be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral or Postpetition Collateral or otherwise.

22.    **Waiver of Debtors' Ability to Request Authority to Obtain Credit under § 364.**  Except as provided herein, the Debtors shall pay all employees and employee taxes, sub-contractors, sub-sub contractors, performance or payment bond premiums, and material-men in a timely fashion and pay all postpetition trade creditors according to terms and be prohibited from at any time during the Chapter 11 Cases granting consensual liens on and security interests in the Prepetition Collateral, the Postpetition Collateral or any portion thereof to any other parties pursuant to section 364 of the Bankruptcy Code or otherwise, which liens and security interests, as the case may be, are senior, or on a parity with, or junior to the liens and security interests of the Prepetition Lender or the Postpetition Lender therein.  Except in accordance with the terms of this Order, the Debtors shall be enjoined and prohibited from at any time (a) using the Prepetition Lender's Cash Collateral, (b) using the Postpetition Collateral, and (c) applying to the Bankruptcy Court for an order authorizing the use of the Prepetition Lender's or the Postpetition Lender's Cash Collateral or Postpetition Collateral; provided, however, that nothing contained in this sentence prohibits the Debtors from contesting the Postpetition Lender's determination that a Termination Event pursuant to paragraph 15(a) above has occurred.  Notwithstanding the foregoing, so long as no Default has occurred, the Debtors are permitted to incur postpetition indebtedness to Donald L. Thiel ("Thiel") in an amount of up to $1,000,000 or such other amount as the Debtors and the Postpetition Lender may agree upon after appropriate motion and order from the Court; provided, however, that (a) in no event shall the Debtors pay Thiel any amounts on account of any prepetition loans or capital contributions that Thiel made to the

Debtors unless and until the Debtors satisfy all amounts owed to the Prepetition Lender and Postpetition Lender, and (b) if a Default shall occur, any amounts the Debtors owe to Thiel on account of such postpetition loans shall be repaid only after the Debtors satisfy all amounts owed to the Prepetition Lender and Postpetition Lender.

23.    The Debtors shall execute and deliver to the Prepetition Lender and the Postpetition Lender all such agreements, financing statements, instruments and other documents as the Prepetition Lender and Postpetition Lender may reasonably request to evidence, confirm, validate or perfect the liens and security interests granted pursuant hereto.

24.    The Debtors shall permit representatives, agents and/or employees of the Prepetition Lender and the Postpetition Lender to have reasonable access to their premises and their records during normal business hours (without unreasonable interference with the proper operation of the Debtors' businesses) and shall cooperate, consult with, and provide to such persons all such non-privileged information as they may reasonably request.

25.    **Waiver of Non-bankruptcy Law Requirements for Perfecting Liens.**  As part of the Debtors' obligations hereunder, and as consideration for the agreement of the Postpetition Lender to provide the Postpetition Loans to the Debtors, the Debtors shall promptly reimburse the Postpetition Lender for its reasonable costs, fees (including reasonable attorneys' fees), charges and expenses to the extent provided for in the Prepetition Financing Documents as the case may be.  The Postpetition Lender shall provide monthly notice to the Debtors of all such costs, fees, charges and expenses.  All such costs, fees, charges and expenses shall be part of the Postpetition Loans and shall have the same rights, status and priority as the Postpetition Loans. The Postpetition Liens and all other liens and security interests granted herein shall, pursuant to this Order, be, and they hereby are, deemed perfected, and no further notice, filing or other act

shall be required to effect such perfection; provided, however, if the Prepetition Lender or Postpetition Lender shall, in its sole discretion, choose to file such mortgages, mortgage amendments, notes, agreements, certificates, financing statements, notices of liens and security interests and other similar documents, all such mortgages, financing statements or similar documents, the Debtors are directed and authorized to promptly execute and deliver these documents as requested by the Bank, and pay for all costs, charges, taxes and fees incurred by Bank, including counsel fees. Notwithstanding their actual date of filing or recording, documents to perfect the Bank's security interests as Postpetition Lender shall be deemed to have been filed or recorded at the time and on the date of entry of this Order. The automatic stay of section 362 of the Bankruptcy Code is hereby vacated to effect the execution, delivery, recording or filing of any documents by the Debtors in connection with the Postpetition Financing extended by the Bank or other financing extended by the Bank covered by this Order.

26. In making decisions to advance moneys or extend financial accommodations of any nature under this Order or the Prepetition Financing Documents, in administering the Debtors' use of Cash Collateral or any advances, loans, or financial accommodations of any sort under this Order or the Prepetition Financing Documents, or in taking any other action related to or in connection with any of the foregoing, the Prepetition Lender and the Postpetition Lender shall not be deemed to be in control of the operations of the Debtors, an "employer" of any of the Debtors' employees, or to be acting as a "responsible person" or managing agent with respect to the operation or management of the Debtors.

27. The provisions of this Order shall be binding upon and inure to the benefit of the Prepetition Lender and the Postpetition Lender and the Debtors and their respective successors

and assigns (including any trustee or other fiduciary hereafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors).

28.    Based on the findings set forth in paragraphs I and M of this Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the postpetition financing arrangement contemplated by this Order, in the event that any or all of the provisions of this Order are hereafter modified, amended or vacated by a subsequent order of this or any other Court, no such modification, amendment or vacation shall affect the validity and enforceability of any lien, security interest or priority authorized or created hereby. Notwithstanding any such modification, amendment or vacation, any claim granted to the Prepetition Lender or the Postpetition Lender hereunder arising prior to the effective date of such modification, amendment or vacation shall be governed in all respects by the original provisions of this Order, and the Prepetition Lender or the Postpetition Lender, as the case may be, shall be entitled to all of the rights, remedies, privileges and benefits, including the liens and priorities granted herein, with respect to any such claim.

29.    **Relief from the Automatic Stay Without Further Order of Court.**  The Debtors are authorized and directed to do and perform all acts, to make, execute, deliver and file all instruments and documents (including, without limitation, the execution of additional security agreements, mortgages and financing statements) and to pay fees and expenses which may be required or necessary for the Debtors' performance hereunder, including, without limitation: (a) the execution of any postpetition financing documents, and (b) the payment of the fees and other expenses described herein or in such postpetition financing documents as such become due, including, without limitation, agent fees, commitment fees, letter of credit fees and facility fees and reasonable attorneys' fees, financial advisers' and accountants' fees and disbursements.  The

automatic stay shall not be deemed to apply and shall be lifted as to all such actions and actions taken by or at the direction of Lender in connection the ministerial actions described in this paragraph.

30.     The obligations of the Debtors in respect of the Postpetition Loans shall not be modified or discharged by the entry of an order confirming a plan of reorganization in this case without the written consent of the Bank.

31.     Because the Debtors have stipulated to the amount of the Prepetition Indebtedness, the Bank is not required to file a proof of claim and the Bank is hereby deemed to have a valid and enforceable claim against each of the Debtors' estates in the full amount of the Prepetition Indebtedness.  The Debtors are and shall be individually and jointly and severally liable for the Prepetition Indebtedness and all postpetition amounts the Bank advances pursuant to this Court's orders.

32.     Notwithstanding anything to the contrary herein, the entry of this Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair, (a) any of the rights of the Bank under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the rights of the Bank to (i) request additional adequate protection of their interests in the Prepetition Collateral or the Postpetition Collateral or relief from or modification of the automatic stay extant under section 362 of the Bankruptcy Code by appropriate motion and order, (ii) request conversion of either Chapter 11 Case to chapter 7, and (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans, or (b) any other rights, claims or privileges (whether legal, equitable or otherwise) of the Bank.

33.     Notwithstanding the above, nothing in this Order shall bind the Bank to provide financing, including either debtor-in-possession financing or the Exit Facility, on the terms set forth herein unless the Debtors: (a) execute and deliver loan documents related to the Postpetition Loans that are of a form reasonably acceptable to the Bank, including but not limited to documents that will provide for the use of a lockbox; and (b) agree to certain financial covenants that are reasonable and consistent with the parties' past practice, including but not limited to the covenants set forth in the Lockbox Agreement attached as Exhibit B to this Order. In accordance with the Postpetition Loans, Exit Facility and the Lockbox Agreement, the Debtors shall direct all of their customers, clientele, and account debtors to make all payments directly to a post office box (a "Lockbox") designated by, and under the exclusive control of, the Bank; provided, however, that the Debtors may accept checks from customers in return for lien releases.  To the extent that the Debtors accept checks from customers in return for lien releases, the Debtors shall deposit such checks with the Bank electronically via remote deposit capture immediately upon receipt of such checks.  Each of the Debtors shall establish a Lockbox and a deposit account (each, a "Lockbox Account") in its name with the Bank into which all payments received in the applicable Lockbox shall be deposited.  Each Debtor shall also deposit all payments it receives into the appropriate Lockbox Account.  All funds deposited into any Lockbox or any Lockbox Account will be swept on a daily basis into a separate deposit account maintained by the Debtors with the Bank and under the exclusive control of the Bank (the "Collection Account").  On each business day, the Bank shall apply funds received into the Collection Account (after a clearance period of three business days applied to those funds) according to the priorities set forth in paragraph 4 of this Order.

34.    This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof. There is no just reason to delay enforcement or appeal of this Order.

### 

Submitted by:

Chad P. Pugatch (FL Bar No. 220582)
RICE PUGATCH ROBINSON & SCHILLER, P.A.
101 NE 3rd Ave., Suite 1800
Fort Lauderdale, FL 33301
Telephone: (954) 462-8000
Facsimile: (954) 462-4300

*Counsel to the Debtors*

Attorney Pugatch is directed to serve a copy of this Order on all interested parties and filed a Certificate of Service.